# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **SHELLI R. DOUGLAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-17-50-SPS** |
| | ) | |
| **COMMISSIONER of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

The claimant Shelli R. Douglas requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]"  *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 23, 1966, and was forty-nine years old at the time of the administrative hearing (Tr. 37). She completed high school and two years of college, and has previously worked as an office manager, dispatcher, and safety manager (Tr. 54, 160). The claimant alleges that she has been unable to work since August 3, 2012, due to fibromyalgia, fatigue, depression, and problems with remembering (Tr. 159).

## Procedural History

On June 12, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Michael E. Finnie conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 27, 2015 (Tr. 14-25). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Additionally, he found that she retained the ability to understand, remember, and carry out simple, repetitive, and routine tasks, and have no

more than occasional contact with the general public (Tr. 19). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, mail clerk, photo copy machine operator, and garment sorter (Tr. 24-25).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly determine the jobs she could perform at step five, and (ii) failing to properly assess the opinion of her counselor. The Court agrees that the ALJ committed reversible error, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of obesity, fibromyalgia, osteoarthritis, spinal enthesopathy, and affective disorder (Tr. 16). The relevant medical records as to the claimant's mental impairments reveal that her primary care physicians prescribed medication for her depression. Although she reported counseling treatment from Mental Health Services of Southern Oklahoma, those records have not been made part of the transcript in this case.

Dr. Kathleen Ward, Ph.D., performed a consultative mental status examination of the claimant on October 8, 2013 (Tr. 322-326). Dr. Ward noted that her Montreal Cognitive Assessment score was suggestive of cognitive functioning deficit and stated that a psychological overlay to her symptoms could not be ruled out, noting that she had the most trouble in tasks requiring immediate or delayed recall/repetition of stimuli (Tr. 324-325). She assessed the claimant with major depressive disorder, recurrent, moderate, and

stated that she might benefit from supportive therapy to manage depressive symptoms and grief (Tr. 324).

On October 15, 2013, state reviewing physician Burnard Pearce, Ph.D., completed a Psychiatric Review Technique form, and found that the claimant's mental impairments consisted of affective disorders, and that she was mildly impaired in the functional category of activities of daily living, and moderately impaired in the categories of maintaining social functioning and maintaining concentration, persistence, or pace (Tr. 63-64). Dr. Pearce then completed a Mental RFC Assessment and found in the area referred to as "Section I" that the claimant was markedly limited in the typical three categories of ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public (Tr. 67-67). Additionally, he indicated that she was moderately limited in the ability to maintain attention and concentration for extended periods (Tr. 68). In the written comments section ("Section III"), Dr. Pearce wrote that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a limited work basis, and could adapt to a work situation, but could not relate to the general public (Tr. 69). These findings were affirmed on review by Joan Holloway, Ph.D., on February 2014 (Tr. 81-83).

On June 25, 2014, Heather Littrell, the claimant's case manager from Mental Health Services of Southern Oklahoma, completed a medical source statement (MSS) related to the claimant's mental impairments. Ms. Littrell indicated that the claimant had marked limitations, *inter alia*, related to simple instructions and interacting with the public, as well as extreme limitations with regard to interacting with co-workers and supervisors, and the

ability to compete a normal work-day and work-week without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 358-359). Ms. Littrell wrote that the claimant had decompensated over the past few months and struggled with pain from fibromyalgia, which created mental anguish and anxiety (Tr. 359). She completed a second MSS on May 13, 2015, in which she again noted marked limitations with regard to simple instructions, but increased her limitation with regard to interacting with the public to extreme, along with the other extreme limitations (Tr. 386-387). She stated that the claimant had continued to decompensate due to her physical limitations, and had even rescheduled appointments due to her physical inability to get to the office, related to her pain from fibromyalgia and her depression (Tr. 387-388).

At the administrative hearing, Ms. Littrell was present and testified on behalf of the claimant. She testified that the claimant had times where she could not make the group counseling appointments that lasted up to an hour and a half, due to physical pain, although she was usually able to make the shorter medication appointments (Tr. 51-52). She testified that the claimant needs to get up and move during counseling sessions due to pain, as well as have the ability to step outside as needed (Tr. 52). She added that the claimant had also been diagnosed with schizoaffective disorder or schizophrenia, and that she hears voices, but is being treated for it (Tr. 52). The ALJ also elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with the following limitations:

. . . who because of moderate difficulties in concentration, persistence, and pace, as well as moderate difficulties in social functioning, was limited to simple routine and repetitive tasks. Those consistent with unskilled work that is learned by a rote, simple instructions; few work related decisions, little judgment required and simple and direct supervision and no more than occasional contact with the general public. And further had a physical [RFC] indicated by Exhibit 4A that would allow for light work, that is occasional lifting and carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and walking for about six hours of an eight-hour workday. No limitations with regard to pushing and pulling and operation of hand and foot controls.

(Tr. 54-55). The VE identified that the claimant could perform the jobs of mail clerk, DICOT § 209.687-026; photocopy machine operator, DICOT § 207.685-014; and production worker, such as garment sorter, DICOT § 222.687-014 (Tr. 55).

In his written opinion, the ALJ summarized the claimant's hearing testimony and Ms. Littrell's testimony, as well as the medical evidence in the record. As to her mental impairments, he summarized Dr. Ward's mental status exam findings (Tr. 21), but made no analysis regarding her findings. He assigned "little credence" to Ms. Littrell's opinions (Tr. 23). Additionally, he stated that the claimant's mental health treatment had not been consistent, that she had not required inpatient treatment, and that there was no evidence that she had difficulty maintaining appropriate social interaction with others, but that she may be irritated by constant or frequent contact with the public. He agreed that the record suggested some difficulty with the claimant's ability to concentrate, persist at tasks, and keep pace, but that her cognitive functioning was intact consistently and that she could express logical and coherent thoughts (Tr. 22-23). He thus concluded that her mental impairments did not preclude the performance of simple routine tasks consistent with unskilled work with no more than occasional contact with the general public (Tr. 23). The

ALJ determined the claimant's RFC as set forth above, then adopted the VE's testimony that she could perform the jobs of mail clerk, photocopy machine operator, and garment sorter (Tr. 19, 25). The ALJ did not reference the third job of production assembler in his written opinion.

The claimant first argues that the VE testimony that the ALJ relied upon was in error, because the ALJ found the claimant retained the ability to understand, remember, and carry out simple, repetitive, and routine tasks no more than occasionally, but the jobs identified failed to reflect these limitations. The Court agrees that the jobs identified *do not* account for those limitations with regard to the reasoning level requirements. The job of mail clerk, DICOT § 209.687-026, has a reasoning level of 3, which requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." Additionally, the jobs of photocopy machine operator, DICOT § 207.685-014, and garment sorter, DICOT § 222.687-0147, both have a reasoning level of 2, which requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" [emphasis added]. The reasoning level best identifies the level of simplicity (or, conversely, complexity) associated with a job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. If a claimant is limited to simple, repetitive tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions, or to deal with problems

involving several concrete variables, would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at \*5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at \*10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified.*" Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at \*4 (Dec. 4, 2000) [emphasis added]. The ALJ did neither in this case.

Here, the ALJ failed to ask the VE to reconcile this conflict or clarify how the DOT could be applied to the claimant's mental limitations, and the ALJ therefore committed reversible error in violation of this Circuit's holding in *Haddock. See also Krueger*, 337

Fed. Appx. at 760–762 (reversing and remanding in part because the ALJ failed to resolve conflict between VE's testimony and DOT job descriptions); *Hackett*, 395 F.3d at 1175 (applying *Haddock* to nonexertional limitations); *Poppa*, 569 F.3d at 1173 (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"). In the Tenth Circuit, this apparent inconsistency is reversible error. *See Hackett*, 395 F.3d at 1176 (finding a limitation to simple and routine work tasks "inconsistent with the demands of level-three reasoning," and reversing "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."). *See also Ward v Colvin*, 2015 WL 9438272, at *3 (W.D. Okla. Sept. 17, 2015) (slip op.) ("The Court declines to find, as urged by the Commissioner, that to the extent GED reasoning levels are not specific mental or skill requirements, they can be disregarded when addressing the mental demands of jobs listed in the DOT.").

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if the ALJ had identified in his opinion other jobs that did not pose a conflict, it is not harmless here because all three jobs identified had reasoning levels of 2 or 3. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

Additionally, the Court agrees with the Plaintiff's contention that the ALJ failed to properly evaluate Ms. Littrell's MSS opinions. Social Security regulations provide for the proper consideration of "other source" opinions such as the opinions provided by Ms. Littrell herein. *See, e. g., Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06-03p at *4-5; 20 C.F.R. § 404.1527(d). Here, the ALJ stated that Ms. Littrell's testimony regarding missed appointments, mental anguish, and pain appeared to be based on the claimant's subjective reports, and was not supported by objective clinical findings. He then asserted that her statement that the claimant could not handle the stress of employment was "too vague and unsubstantiated" (Tr. 23). This demonstrates that the ALJ failed to consider Ms. Littrell's opinion in accordance with the requirements of SSR 06-03p and the factors set

forth above, and further demonstrates improper picking and choosing. *See, e. g., Clifton v. Chater*, 79 F.3d 1007, 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984).

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

### Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**